UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


D'ANGELO ROYSTER,

      Plaintiff,

v.                                    Case No. 2:06-cv-293
                                    HON. ROBERT HOLMES BELL

GERALD RILEY, et al.,

      Defendants.

_____/


## REPORT AND RECOMMENDATION

Plaintiff D'Angelo Royster filed this civil rights action pursuant to 42 U.S.C. § 1983 against defendants Gerald Riley, David Bergh and Dave Burnett. Plaintiff alleges that he has been a Zen Buddhist since 1998. In March 2006, plaintiff was interviewed by Chaplain Gerald Riley to be approved for the Buddhist meal program. Chaplain Riley refused to review plaintiff's medical progress notes, which showed that plaintiff had declared himself a Zen Buddhist in 1998. Moreover, Chaplain Riley questioned plaintiff about Buddhism rather than Zen Buddhism. Chaplain Riley recommended that plaintiff's request for a Buddhist diet be denied. David Bergh, LMF Warden, approved the recommendation, and Dave Burnett, Michigan Department of Corrections Special Activities Coordinator, made the final decision to deny plaintiff a Buddhist diet. Plaintiff presently receives a vegetarian diet. Plaintiff alleges that as a Zen Buddhist he is required to eat a strict vegan diet, which does not include dairy products. Plaintiff is allegedly lactose intolerant and consuming dairy products causes him to experience an allergic reaction and tinnitus. Plaintiff is prescribed medication for both conditions.

Defendants move for summary judgment.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff asserts that his due process rights were violated when defendant Riley did not consider plaintiff's ministry license or plaintiff's medical records which show that plaintiff had informed a doctor that he was Buddhist.  Policy Directive 05.03.150 TT states in part that after a request is made in writing, the prison "shall obtain information regarding the prisoner's request and

religious beliefs prior to referring the request . . . ."  Clearly, there is no mandatory language which requires the specific information to be gathered.   Moreover, plaintiff has no due process rights arising from the prison policy directives.  Prior to *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court's decision in *Hewitt v. Helms*, 459 U.S. 460 (1983), provided the controlling law for determining whether a state statute granted prisoners a federally cognizable liberty interest.  The Court held that the State created a protected liberty interest because the statute contained "explicitly mandatory language" that placed substantive limitations on the discretion of prison officials to place prisoners in segregation.  *Id.* at 472.  In *Sandin*, the Supreme Court revisited the issue of how to determine whether a state statute grants prisoners a liberty interest protected by the Due Process Clause.  Like *Hewitt*, the case involved disciplinary segregation for a prisoner who had committed a misconduct.  In *Sandin*, the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).  The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship.  *Sandin*, 515 U.S. at 484.  Similarly, not considering plaintiff's medical records or his minister status could not have violated plaintiff's due process rights.  The failure to consider those factors and records in determining whether a religious meal was required, in the opinion of the undersigned, was not an atypical and significant hardship in relation to the ordinary incidents of prison life.

Plaintiff alleges that his equal protection rights were violated by defendants because the prison does not distinguish between Buddhism and Zen Buddhism. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976).

However, a claim that plaintiff was treated one way and everyone else was treated another way, by itself, is not sufficient to state an equal protection claim. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 510 U.S. 842 (1993). Rather, plaintiff must show that he was victimized by some suspect classification. *Id*. Absent some allegation or proof that the law was applied differently to plaintiff because of race, gender, age, or some other improper classification, no equal protection claim has been stated. *See Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir. 1985) (Conte, J., concurring); *see also Galbraith v. Northern Telecom, Inc.*, 944 F.2d 275, 282 (6th Cir. 1991), *cert. denied*, 503 U.S. 945 (1992) (a person's conduct is legitimate for purpose of the equal protection clause even though it may have been mean-spirited, ill-considered, or other unjustifiable, objectionable, or unreasonable, so long as it was not motivated by class-based discrimination). Plaintiff has not established how he is being treated differently. Rather, plaintiff has simply asserted that he is being treated the same. Plaintiff, in fact, wants different treatment. Plaintiff has not asserted an actionable equal protection claim.

Plaintiff asserts that the denial of a religious diet violated his Eighth Amendment rights. The Eighth Amendment imposes a constitutional limitation on the power of the states to

- 4 -

punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Plaintiff has not shown that he has medical orders for a specific diet. The denial of a religious diet cannot be grounds for an Eighth Amendment claim. Moreover, plaintiff has not established that these defendants are involved in his medical care. Plaintiff's Eighth Amendment claim must fail.

Plaintiff alleges that his First Amendment rights were infringed by the denial of a religious meal. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest". *See, for example, Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, plaintiff's constitutional rights are subject to severe restriction. *See, for example, Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses);

- 5 -

*Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations." *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id.* at 90. "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).The court is not required to weigh evenly or to explicitly consider each of the four *Turner* factors. *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir.

1999)(denying vegan diet to prisoner did not violate prisoner's First Amendment rights).  The Sixth

Circuit explained:

> By creating the *Turner* test, the Supreme Court surely did not intend
> to provide a mechanism through which prisoners could mount
> repeated challenges to prison regulations and require courts to
> analyze, in detail, the impact such regulations would have in any
> particular factual setting, even if prior court precedent would seem to
> dictate the validity of the regulations.  On the contrary:  the Supreme
> Court's creation of the *Turner* standard was motivated by a desire to
> "ensure[ ] the ability of corrections officials to anticipate security
> problems and to adopt innovative solutions to the intractable
> problems of prison administration, and avoid[ ] unnecessary intrusion
> of the judiciary into problems particularly ill suited to resolution by
> decree." *O'Lone*, 482 U.S. at 349, 107 S.Ct. 2400 (quotation marks
> omitted).  Penal authorities may need a clear rule for dealing with
> certain continuing or recurring situations, even when that rule could
> be better-tailored to the rights of individual prisoners through a
> court's flexible, case-by-case analysis.

*Id.* at 404.

The MDOC offers a strict vegetarian diet for religious reasons to groups including

Buddhists.  Policy Directive 05.03.150 provides, in part:

> PP.  The regular diet menu shall be posted a minimum of one week
> in advance in all facilities at which meals are provided to prisoners to
> permit observance of any religious dietary restrictions.  Prisoners
> shall be permitted to abstain from any foods that violate their
> religious tenets.  Non-meat entrees shall be available as set forth in
> PD 04.07.100 "Offender Meals."
>
> QQ.  Adequate menu substitutions shall be available to prisoners in
> all facilities at which meals are provided to meet necessary religious
> dietary restrictions.  Any questions as to whether a menu substitution
> is required shall be referred to the CFA Special Activities
> Coordinator for resolution.
>
> RR.  The CFA or FOA Deputy Director or designee may authorize
> the development of a separate menu to meet the necessary religious
> dietary restrictions of a prisoner.   Such menus shall meet the
> minimum nutritional standards set forth in PD 04.07.100 "Offender
> Meals".  The appropriate Deputy Director or designee shall have final

approval of such menus and shall determine at which facilities the meals will be offered.  Kosher meals shall be provided in CFA institutions as set forth in OP 05.03.150-A "Kosher Meal Program."

SS.  A prisoner may eat from a religious menu only with approval of the CFA Special Activities Coordinator.  Approval shall be granted only if it is necessary to the practice of the prisoner's designated religion.  To request approval, the prisoner must submit a written request to the Warden, TRV Manager, or designee, as appropriate, who shall obtain information regarding the prisoner's request and religious beliefs prior to referring the request to the CFA Special Activities Coordinator. The CFA Special Activities Coordinator shall notify the Warden, TRV Manager or designee, as appropriate, of a decision; the Warden or TRV Manager shall ensure that the prisoner is notified. A prisoner whose request is denied shall not be allowed to submit another request to eat from that religious menu for at least one year.

The prison policy is constitutional.  The prison is entitled to create some standard to determine whether a prisoner is entitled to a religious meal.  Providing special meals to prisoners is more costly than providing a standard meal.  Some prisoners may make requests for a religious meal simply to manipulate a transfer to a different prison.  Determining sincerity of a religious belief is a difficult task.  In this case, plaintiff was interviewed on multiple occasions between 2003 and 2006. Plaintiff first requested a Buddhist diet during early 2003.  The request was denied because plaintiff had not declared his religious preference as Buddhist and he had no knowledge of Buddhist practices.  Plaintiff changed his religious designation on September 22, 2003, to Buddhism.  Plaintiff was interviewed in March 2004 for placement on a Buddhist diet program.  That request was denied because plaintiff lacked knowledge of Buddhist dietary requirements.  During May of that year, plaintiff sent defendant Burnett a "Notice to File Claim."  Plaintiff indicated that he wanted a transfer to Ionia Maximum Prison because that prison offered a proper Buddhist diet that the Baraga prison could not offer for Mayhana Buddhists.  On March 17, 2005, Chaplain Riley informed defendant Burnett that plaintiff was called out for an interview regarding his request for a Buddhist diet, but

plaintiff refused to participate in the process.  Plaintiff's request was denied.  Plaintiff indicated that he refused to participate in the interview because of his pending lawsuit and he believed that he would not receive a fair interview.  Plaintiff was again denied a request for a Buddhist meal program on April 26, 2006, because of his lack of knowledge of the requirements of the diet.  In denying this request defendant Burnett explained:

> It is noted that Royster has requested accommodation with the strict vegetarian menu in the past [which] has been denied in 2003, 2004 and 2005.  Royster was interviewed by Chaplain Gerald Riley.  Riley reports Royster wanted the paperwork to show that he has a Ministerial License from the Universal Life Church.  It is not clear why he believes that having sent a few dollars to purchase a Ministerial License from a Christian organization that sells ministerial licenses would indicate he is sincere about pursuing the practices of Buddhism.  In reality, that fact suggests he is not being sincere.  When asked about his faith's basic teachings, he provided almost no information about Buddhism.  Riley points out that he is basically no more knowledgeable about Buddhism and its dietary requirements than he did three years ago when he was first interviewed.  While sincerity is based on extrinsic data that is often difficult to ascertain, it appears that Royster has not been sincere in pursuing the practice of his faith.  He is choosing to no learn about his faith.  Consequently, based on the information available to me, and based on the appearance that he is not sincere regarding the practice of his faith, Royster's request for strict vegetarian accommodations is denied at this time.  He should not be transferred for the purpose of accommodation with the strict vegetarian menu.

> It is understood that denial of admission to a special religious menu is not a failure to recognize faith preference.  Requests to declare religious preference, to purchase and possess approved religious items and to attend religious services must be processed according to Department policy.

Plaintiff also claims that defendants' conduct violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1.  Section 2000cc-1 of the RLUIPA states:

(a)     General Rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1)     is in furtherance of a compelling governmental interest; and

(2)     is the least restrictive means of furthering that compelling governmental interest.

This rule applies solely in cases where the "substantial burden is imposed in a program or activity that receives Federal financial assistance," or where the burden affects "commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b). If plaintiff has a sincere religious belief, then failing to provide him a religious based diet could qualify as a substantial burden on plaintiff's right to practice his religion.

In this case, under a totality of the circumstances approach, defendants have articulated valid reasons which could justify the refusal to provide plaintiff a Buddhist diet. In the opinion of the undersigned, defendants have set forth valid reasons to deny plaintiff his request for a religious meal. Based upon plaintiff's interview and the information gathered by defendants, it was not unreasonable to deny plaintiff's request. Plaintiff exhibited a lack of knowledge over the years of the requirements of Buddhism. Accordingly, defendants' determination that plaintiff showed a lack of sincerity should not be disturbed by this Court. In the opinion of the undersigned, typically it is difficult for a defendant to establish that a plaintiff's religious belief is not sincerely held. Prisoners are not automatically entitled to specific religious accommodations just by claiming an entitlement. The prison must maintain some aspect of control in accommodating prisoners needs. Defendants have the right to make sure that each prisoner is sincere in his belief before allowing a

- 10 -

prisoner access to a religious based meal program.  It is recognized that this is a very difficult task to undertake.  However, a lack of the basic knowledge regarding why specific food must be consumed for a religion is a strong indication of a lack of sincerity.  Under the circumstances of this case, it is the opinion of the undersigned that defendants correctly considered plaintiff's sincerity and made an appropriate and well reasoned decision under the totality of facts available.  In the opinion of the undersigned, defendants are entitled to summary judgment on plaintiff's claims.

Defendants have also moved for dismissal based upon the defense of qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits.  *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent.  *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely

- 11 -

disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

> The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> > The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:

> > A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

> Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

> Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect

a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d 425. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Defendants have established that they did not violate plaintiff's constitutional rights. Accordingly, in the opinion of the undersigned defendants are entitled to the qualified immunity defense.

Plaintiff also moves for a temporary restraining order and preliminary injunction. The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

- 13 -

1.  Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

2.  Whether the movant has shown irreparable injury.

3.  Whether the preliminary injunction could harm third parties.

4.  Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994).  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers.  *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984).  *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979).  It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances.  *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969).  *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action.  *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989).  A review of the materials of record fails to establish a substantial likelihood of success with respect to plaintiff's claim that the defendants have violated his federal rights.  Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an

- 14 -

injunction.  Any interference by the federal courts in the administration of state prison matters is necessarily disruptive.  The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.  *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988).  That showing has not been made here.

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendants' motion for summary judgment.  Accordingly, it is recommended that defendants' motion for summary judgment (Docket #57) be granted and that this case be dismissed in its entirety.  It is further recommended that plaintiff's motion to withdraw all contents of defendants' motion (Docket #72), motion for a temporary restraining order and preliminary injunction (Docket #85), and motion for immediate consideration (Docket #92) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  November 14, 2007

- 15 -